OPINION *Page 2 
{¶ 1} Defendant-Appellant Richard Lee Wolf appeals his conviction and sentence entered in the Richland County Court of Common Pleas following a trial by jury.
 {¶ 2} Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} On or about April 21, 2006, Larry Wise, the Superintendent of the Shelby City Wastewater Treatment Plant, was cleaning out some old files from the city-owned computer at the plant during which he found a nude photograph of one of his employees, Richard Lee Wolf (hereinafter "Appellant"). (T. at 103-104, 120). Mr. Wise immediately shut down the computer and reported the situation to the Shelby Utilities Director, Brad Harvey. (T. at 104, 120). Mr. Harvey, in turn, contacted the Shelby Police Department, asking to speak to Chief Mike Bennett personally for advice on how to proceed. (T. at 122). The chief was unavailable that day, so Mr. Harvey directed Mr. Wise to take the computer, and lock it in the trunk of his car where it would be secured for the weekend. (T. at 104-105).
 {¶ 4} The following Monday morning, Larry Wise took the computer to the Shelby Police Department and turned it over to Sergeant David Mack, who was assigned to conduct the investigation. (T. at 105, 122). Sgt. Mack immediately made contact with Appellant at the wastewater treatment plant and took a statement regarding his activities on the city's computer during working hours. Appellant admitted that he joined a website called "Adult Friend Finder" in January, 2006 to meet women. (T. at 139). Several of the women asked for his picture, so he bought a digital camera in *Page 3 
March and took some naked pictures of himself. Appellant admitted that he used the city-owned computer in the wastewater treatment plant to upload and send those photographs while he was on the clock. (T. at 140-141). He had also accessed various pornography websites on and off since December, 2005. (T. at 141). Appellant also admitted that his conduct was in violation of established work practices, and was "unethical and wrong;" however, he did not believe that he committed a crime. (T. at 141).
 {¶ 5} During the course of his investigation, Sgt. Mack also contacted Detective Scott Dollison of the Westerville Police Department to conduct a forensic analysis of the computer's hard drive. (T. at 142-144). From his analysis, Detective Dollison determined there were several inappropriate web sites that were accessed on the city-owned computer. In the computer's temporary internet files, Detective Dollison located 703 pornographic photos and several sexually explicit e-mails in which appellant was soliciting services from a dominatrix named Madam Patrice. (T. at 144, 159, 170-176). Comparing the dates and times the photographs and e-mails were accessed to the time cards from the wastewater treatment plant, Sgt. Mack determined Appellant was working during those times. (T. at 147).
 {¶ 6} Following the forensic analysis of the computer, Sgt. Mack met with Appellant at the wastewater treatment plant on October 19, 2006. At that time, he took another statement from Appellant. (T. at 145-146). Appellant admitted that he used the internet on the City of Shelby's computer during hours that he was working for the City of Shelby. (T. at 147). Appellant estimated that he spent over a hundred hours on the *Page 4 
internet for personal business when he should have been performing work for the City of Shelby. (T. at 147).
 {¶ 7} Payroll records maintained by the City of Shelby indicated Appellant's hourly wage in December, 2005 was $17.19 an hour plus benefits. From January, 2006 to June, 2006, Appellant's hourly wage was $17.71 an hour, and with benefits it was $23.92. (T. at 180). Therefore, for the hundred hours Appellant was on the internet while he should have been working, he would have been paid $2,392.00 (T. at 180).
 {¶ 8} As a result of the investigation, Appellant was indicted by the Richland County Grand Jury on one count of theft in office, with a specification that the value of the property or services stolen was more than $500 and less than $5000, in violation of R.C. 2921.41(A)(2), a fourth degree felony; one count of unauthorized access to a computer, with a specification that the value of the property or services stolen was more than $500 and less than $5000, in violation of R.C. 2913.04(B), a fifth degree felony; one count of unauthorized use of property, in violation of R.C. 2913.04(A), a fourth degree misdemeanor; and one count of solicitation, in violation of R.C. 2907.24(A), a third degree misdemeanor. Appellant had originally been charged with one count of theft in office pursuant to a bill of information filed in Case Number 2006-CR-0880, which case was dismissed when the four-count indictment was filed in Case Number 2007-CR-0084.
 {¶ 9} Appellant pled not guilty to all counts in the indictment, and his case was set for trial before Judge James DeWeese.
 {¶ 10} On December 13, 2007, his jury trial commenced. During its case, the prosecution presented testimony from Larry Wise, the Superintendent of the City of *Page 5 
Shelby's Wastewater Treatment Plant; Brad Harvey, the Director of Public Utilities for the City of Shelby; Sergeant David Mack from the Shelby Police Department; Detective Scott Dollison of the Westerville Police Department; and Robert Lafferty, the Finance Director for the City of Shelby. At the conclusion of the State's case, Appellant chose not to take the stand and the defense rested its case without calling any witnesses.
 {¶ 11} On December 14, 2007, the jury reached a verdict. Appellant was found guilty of theft in office, the felony unauthorized use of property charge, and soliciting prostitution. He was found not guilty of the misdemeanor count of unauthorized use of property.
 {¶ 12} As a result of his convictions, the trial court sentenced Appellant to fifteen (15) months in prison on the two felony counts, and fined him $5,000.00. The trial court also ordered Appellant to pay restitution in the amount of $2,392.00 to the City of Shelby. On the misdemeanor count of soliciting prostitution, the trial court sentenced Appellant to sixty (60) days in jail, to run concurrent to his felony sentence, and a $500.00 fine.
 {¶ 13} Defendant-Appellant now appeals his sentence and conviction, raising the following assignments of error:
 ASSIGNMENTS OF ERROR {¶ 14} "I. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AS TO THE CHARGE OF UNAUTHORIZED ACCESS OF A COMPUTER, AS THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THE ELEMENTS OF A VIOLATION OF OHIO REVISED CODE SECTION 2913.04(B). *Page 6 
 {¶ 15} "II. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTION FOR A DIRECTED VERDICT OF ACQUITTAL AS TO THE CHARGE OF THEFT IN OFFICE, AS THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH THE ELEMENTS OF A VIOLATION OF OHIO REVISED CODE SECTION 2921.41(A)(2).
 {¶ 16} "III. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE IRRELEVANT AND HIGHLY PREJUDICIAL MATERIAL PURPORTING TO SUPPORT THE CHARGES AGAINST DEFENDANT-APPELLANT.
 {¶ 17} "IV. THE CONVICTIONS OF DEFENDANT-APPELLANT FOR UNAUTHORIZED USE OF A COMPUTER AND THEFT IN OFFICE ARE CONTRARY TO PUBLIC POLICY AND CREATE SUCH A MANIFEST MISCARRIAGE OF JUSTICE THAT SUCH CONVICTIONS MUST BE REVERSED.
 {¶ 18} "V. THE CONVICTION AND SENTENCING OF DEFENDANT-APPELLANT FOR THEFT IN OFFICE, AS A FOURTH-DEGREE FELONY PURSUANT TO OHIO REVISED CODE SECTION 2921.41(B), WAS NOT SUPPORTED BY ANY EVIDENCE TO ESTABLISH THE LOSS OF PROPERTY OR SERVICES AS A RESULT OF THE COMMISSION OF THE OFFENSE.
 {¶ 19} "VI. THE TRIAL COURT ERRED BY SENTENCING DEFENDANT-APPELLANT TO AN AMOUNT OF MONETARY RESTITUTION, AS THERE WAS NO EVIDENCE PRESENTED OF A LOSS OF PROPERTY OR SERVICES AS A RESULT OF THE COMMISSION OF ANY OFFENSE FOR WHICH DEFENDANT-APPELLANT WAS CONVICTED. *Page 7 
 {¶ 20} "VII. THE TRIAL COURT COMMITTED PLAIN AND PREJUDICIAL ERROR BY PERMITTING THE PROSECUTION TO INTRODUCE EVIDENCE OUTSIDE THE SCOPE OF RE-DIRECT EXAMINATION TO SUPPORT THE CHARGE OF SOLICITING IN VIOLATION OF OHIO REVISED CODE SECTION 2907.24(A).
 {¶ 21} "VIII. THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE INADMISSIBLE AND PREJUDICIAL HEARSAY TO SUPPORT THE CHARGE OF SOLICITATION.
 {¶ 22} "IX. THE CONVICTION OF DEFENDANT-APPELLANT FOR SOLICITING IN VIOLATION OF OHIO REVISED CODE SECTION 2907.24(A) WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO ESTABLISH THE ELEMENTS OF THE OFFENSE."
 {¶ 23} For clarity and ease of discussion, we shall address Appellant's assignments of error out of order.
VII., VIII., IX.
 {¶ 24} Appellant was charged and convicted of the misdemeanor charge of Solicitation, in violation of R.C. § 2907.24(A), which provides:
 {¶ 25} R.C. § 2907.24 Soliciting
 {¶ 26} "(A) No person shall solicit another to engage with such other person in sexual activity for hire."
 {¶ 27} "Sexual activity" is defined in R.C. § 2907.01 (C) as
 {¶ 28} "(C) "Sexual activity" means sexual conduct or sexual contact, or both."
 {¶ 29} "Sexual conduct" and "sexual contact" are defined in R.C. § 2907.01 as: *Page 8 
 {¶ 30} "(A) "Sexual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.
 {¶ 31} "(B) "Sexual contact" means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 32} Upon review of the transcript, we find that the State presented the following excerpts from a document containing the e-mail correspondence between Appellant and Mistress Patrice:
 {¶ 33} rlbond_52@yahoo.com: ". . . First off, thank you for taking the time to remember me. I have yet to be at the mercy of a true dom mistress. You are incredibly seductive, and I would love for you to be the first one to `break me in'. We're talking `light stuff here, OK! Also, I have never been involved in any monetary transactions or arrangements. . . .so this is all new to me. Obviously I would be with you for at least an hour, but I would prefer to be with you for at (sic) 2 hrs, contingent on your discount. Is it possible to spend the last half hour or so being your lover? Whatever is possible, please let me know. I look forward to hearing from you again. Have a great weekend. Rick."
 {¶ 34} The transcript (T. at 175) differs slightly from the above excerpt which was taken from Exhibit 8 presented to the jury. *Page 9 
 {¶ 35} On cross-examination, the following excerpt was also read to the jury:
 {¶ 36} mistresspatrice@yahoo.com: "I do not have sex with my slaves. If you are interested in a bdsm session only then that can be arranged. But no sex. I would give you a two hour session for 175. The regular rate is 150 per hour for light domination." (T. at 176-177).
 {¶ 37} We would also note that although the State did not present the entire e-mail communication through trial testimony, Exhibit 8, which was presented to the jury, also contained the following correspondence from Appellant in response to Mistress Patrice's e-mail:
 {¶ 38} rlbond_52@yahoo.com: "Hi Mistress Patrice, I appreciate you keeping me in mind, and also for the very generous offer. Presently I have a lot of financial issues on my plate and as much as I would love to be with you now, I cannot. May I contact you in the future when things turn around? Ok, no sex . . . but I do get to climax though, right? Rick."
 {¶ 39} The issue of solicitation can be more difficult than one might expect. There was no direct statement requesting sex in exchange for money. In the traditional on-the-street solicitation there rarely is. For example, "Would you have sex with me for $50?" Usually the solicitation is couched in terms of "How about a date for $50" or similar language. Sometimes different terms for sexual conduct are used such as slang terms for oral sex or other sexual activities. The meaning of such terms is usually provided by an officer who testifies that in his experience these terms mean a particular sex act.
 {¶ 40} In the case before us, the language includes "mistress", "bdsm", "session", "lover", and "climax". No testimony was given as to the meaning of these words. The *Page 10 
jurors were left to decide what those terms meant. Obviously there can be multiple meanings for words. Words often are understood through the context in which they are used. The statement "he was sentenced to the big house" means that he was sent to prison not that he is living in a very large house. Here, "Mistress" has a connotation beyond the formal and traditional introduction of a woman in a formal setting. When placed in the context of the e-mail communications referencing sessions of domination, etc. the word takes on a different connotation.
 {¶ 41} The word "lover", of course, also has many connotations and in this case the question becomes could a juror reasonably draw the inference of a sexual relationship as defined in the Ohio Revised Code? The term "climax" has the meaning of finishing or completing. In the context of the e-mails this could be understood to mean ejaculation at the completion of a sexual session.
 {¶ 42} Maybe the most difficult term to apply meaning to is the acronym "bdsm". It would be hard to determine what meaning or understanding any individual might attach to that term. It is this Court's understanding that "bdsm" is a complex acronym derived from the terms bondage and discipline, dominance and submission, sadism and masochism. The question is: without additional explanation, could a juror reasonably apply a sexual connotation to that acronym.
 {¶ 43} When you take all these terms and place them in the context of the e-mails along with Appellant's other online activities, such as the posting of nude photos of himself for the purpose of "online dating" and use of his computer to access pornographic websites, this Court finds jurors could reasonably conclude that Appellant was soliciting sex. *Page 11 
 {¶ 44} As to Appellant's argument that the trial court erred in allowing the State of Ohio to introduce Exhibit 8 upon re-direct, we find that Appellant failed to raise such error at trial. A fundamental rule of appellate procedure is that a reviewing court will not consider as error any issue that a party failed to bring to the trial court's attention. Schade v. Carnegie Body Co. (1982), 70 Ohio St. 2d 207, 210,436 N.E.2d 1001. Thus, a party waives the right to contest an issue on appeal if that issue was in existence prior to or at the time of trial and the party did not raise it at the appropriate time in the trial court. Van Camp v. Riley (1984), 16 Ohio App. 3d 457, 463,476 N.E.2d 1078.
 {¶ 45} Appellant also argues that the e-mail statements of Mistress Patrice constituted inadmissible hearsay. However, upon review, we find it was his statements, not hers, that were being offered by the prosecution to prove Appellant committed the crime of solicitation. We therefore find her statements were not hearsay.
 {¶ 46} Based on the foregoing, we find the evidence presented by the State was sufficient to support a conviction for solicitation.
 {¶ 47} Appellant's seventh, eighth and ninth assignments of error are overruled.
 I. {¶ 48} In Appellant's first assignment of error, he argues that the trial court erred in overruling his motion for acquittal on the charge of unauthorized access of a computer. We disagree.
 {¶ 49} Appellant was charged and convicted of unauthorized use of computer or telecommunication property, in violation of R.C. § 2913.04, which provides, in relevant part: *Page 12 
 {¶ 50} "(A) No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent.
 {¶ 51} "(B) No person, in any manner and by any means, including, but not limited to, computer hacking, shall knowingly gain access to, attempt to gain access to, or cause access to be gained to any computer, computer system, computer network, cable service, cable system, telecommunications device, telecommunications service, or information service without the consent of, or beyond the scope of the express or implied consent of, the owner of the computer, computer system, computer network, cable service, cable system, telecommunications device, telecommunications service, or information service or other person authorized to give consent."
 {¶ 52} Upon review, we find that the crux of the State's "unauthorized use" case was based on the proposition that Appellant was acting outside the scope of his authorization to use the computer by engaging in criminal conduct, i.e. soliciting prostitution.
 {¶ 53} Having found that the State presented evidence Appellant used his computer to upload nude pictures of himself onto adult dating sites and to access certain pornographic websites to support the charge of solicitation, in addition to using his computer to engage in the criminal act of solicitation, we find such conduct was "beyond the scope of the express or implied consent and the charge of "unauthorized use of a computer" was based upon sufficient evidence.
 {¶ 54} Accordingly, Appellant's first assignment of error is overruled. *Page 13 
 II. {¶ 55} In his second assignment of error, Appellant argues that the trial court erred in overruling his motion for acquittal on the charge of theft in office. We agree.
 {¶ 56} Appellant was charged and convicted of theft in office in violation of R.C. § 2921.41, which provides in relevant part:
 {¶ 57} "(A) No public official or party official shall commit any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, when either of the following applies:
 {¶ 58} "(1) * * *
 {¶ 59} "(2) The property or service involved is owned by this state, any other state, the United States, a county, a municipal corporation, a township, or any political subdivision, department, or agency of any of them, is owned by a political party, or is part of a political campaign fund."
 {¶ 60} R.C. § 2913.01(K) defines a "theft offense" as any of the following:
 {¶ 61} "(1) A violation of section 2911.01, 2911.02, 2911.11, 2911.12,2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04, 2913.041, 2913.05,2913.06, 2913.11, 2913.21, 2913.31, 2913.32, 2913.33, 2913.34, 2913.40,2913.42, 2913.43, 2913.44, 2913.45, 2913.47, former section 2913.47 or2913.48, or section 2913.51, 2915.05, or 2921.41 of the Revised Code;"
 {¶ 62} In order to determine whether there was sufficient evidence to support a theft conviction, we must review R.C. § 2913.02, which provides: *Page 14 
 {¶ 63} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 64} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 65} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
 {¶ 66} "(3) By deception;
 {¶ 67} "(4) By threat;
 {¶ 68} "(5) By intimidation."
 {¶ 69} In the present case, the State is alleging that Appellant deprived the City of Shelby of his services while he was engaging in the unauthorized use of his computer.
 {¶ 70} Upon review, we find that while the State presented evidence Appellant spent approximately 100 hours over a five month-period utilizing internet websites that were not related to his job, there was no evidence presented that his job performance suffered or that he failed to perform his job duties.
 {¶ 71} Furthermore, even if it could be shown that Appellant failed to perform such job duties, while it could certainly serve as a basis for termination from his employment, such could not be the basis of a criminal theft in office charge.
 {¶ 72} Appellant's second assignment of error is sustained. *Page 15 
 III. {¶ 73} In his third assignment of error, Appellant argues that the trial court erred in admitting evidence that was irrelevant and highly prejudicial. We disagree.
 {¶ 74} The trial court allowed the State to present, and admitted into evidence, the e-mail correspondence and a limited number of images found on the hard drive of Appellant's work computer. Appellant argues the introduction of these materials only served to prejudice him, as he had already admitted he had accessed the internet for personal reasons.
 {¶ 75} The admission or exclusion of evidence lies in the trial court's sound discretion. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343. Likewise, the admission or exclusion of photographs under Evid. R. 403 is left to the sound discretion of the trial court.State v. Hill (1967), 12 Ohio St.2d 88, 232 N.E.2d 394, paragraph two of the syllabus. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 76} Evid. R. 401 defines "relevant evidence" as, "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 77} Evid. R. 402 provides:
 {¶ 78} "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of *Page 16 
Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible."
 {¶ 79} In this case, the State sought the introduction of such photographs and e-mail correspondence to show the jury the sheer volume of such materials and to rebut Appellant's defense that he was only accessing his computer to engage in such pursuits during his breaks.
 {¶ 80} Upon review, we find that the trial court, in an attempt to allow the State to illustrate the volume of materials found on Appellant's computer without requiring the jury to look at every image retrieved, limited the number of photographs to be admitted into evidence. We therefore are not persuaded that the trial court abused its discretion in admitting the photographs and in finding the danger of undue prejudice caused by admission of the photographs did not substantially outweigh their probative value.
 {¶ 81} Appellant's third assignment of error is overruled.
 IV. {¶ 82} In his fourth assignment of error, Appellant argues that his convictions for unauthorized use and theft in office are contrary to public policy.
 {¶ 83} Having previously found that the charge of theft in office was not supported by the evidence, we shall only address this assignment as it pertains to the charge of unauthorized use.
 {¶ 84} Upon review, we find Appellant supports this assignment of error with the same arguments we found unpersuasive in his first assignment of error. We therefore overrule this assignment of error. *Page 17 
 V., VI. {¶ 85} In his fifth and sixth assignments of error, Appellant argues that the value placed on the loss of his services which were allegedly stolen for purposes of the conviction and sentence for the charge of theft in office were not supported by the evidence.
 {¶ 86} Based on our finding that the theft in office charge was not supported by the evidence, we find such assignment of error moot.
 {¶ 87} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed in part and reversed in part. Appellant's conviction and sentence and the charge of theft in office are hereby vacated.
Wise, J., Hoffman, P. J., concurs separately.
Delaney, J., concurs in part and dissents in part. *Page 18